Your Honor, may it please the Court. There is no question that Mr. Hahn's conviction on Count 4, his second 924C conviction, is invalid under the rule the Tenth Circuit announced en banc in Rents. The only remaining dispute is whether that fact, when paired with the fact that he's had no meaningful opportunity to raise that claim on collateral review, is sufficient to allow this Court to exercise jurisdiction over his 2241 petition. And the answer to that question is yes, for three reasons. First, the In re Jones test interpreting 2255E's savings clause is not a procedural default gateway, and it has never been treated as such by this Court. Accordingly, the Boosley-Schlepp standard that the government invokes has no place in this context. Second, no potentially applicable standard that this Court would apply would permit it to do what the government asks, which is to ignore the charges as they appear in the indictment and ask what a hypothetical jury might have done on a different charging theory. Third, even if this Court were willing to imagine different charges, the facts in this case simply don't support two possessions within the meaning of 924C. And that's because Mr. Hahn only engaged in one affirmative act of possession involving guns in the drug trade, and that's what Congress was seeking to punish with 924C. Mr. Hahn is entitled to bring a 2241 petition if even one of those points is correct. And that's no surprise, because Mr. Hahn is exactly the type of petitioner that this Court was thinking of in In re Jones when it held that the savings clause of 2255E is meant to preserve one meaningful opportunity for a petitioner to have his claim heard on collateral review. We know now that Mr. Hahn has a meritorious argument that his conviction on count 4 is invalid under the statute, and he's had no meaningful opportunity to raise that argument on the merits through no fault of his own. So is this a challenge to the conviction or a challenge to the sentence? It's a challenge to the conviction on count 4, his second 924C conviction. Under the rule in Rents, that would have had to have been based on a separate possession than the one that was at issue for count 3. And we know from looking at the indictment at page 29 of the JA that the government listed the possession of the same gun collection on the same day as the basis for the act for both counts 3 and counts 4. And we know that under any test, that would be a multiplicitous indictment within the meaning of rents. And so this Court, at step 2 of In re Jones, the only thing that it needs to do is to apply the rule announced in Rents to Mr. Hahn's actual conviction on count 4 the way that that was achieved and obtained in the district court and to determine whether it still remains valid under the rule in Rents. We know that it doesn't because, like I mentioned, it's based on the exact same possession as the one that was issued. What support is there for applying rents retroactively? Well, Your Honor, this Court, in applying In re Jones, has never required a holding of retroactivity. What it's required is that the rule amounts to a substantive change in the law. And we know that rents is a substantive change in the law because it narrows the conduct that is criminalized by the statute. It says only independent acts of use, carry, or possession are covered when they further a predicate offense, not simply additional predicate offenses based on the same use, carry, or possession. So that amounts to a substantive change of law within the meaning of Shrero v. Sutherland. And it's similar to the type of rule that was in the Davis v. United States case in which the Supreme Court determined that this type of statutory change should apply retroactively on collateral review and is cognizable on collateral review as a fundamental defect. I'd just like to emphasize the reasons why, under Prong 2, the appropriate course is to simply apply rents to Mr. Hahn's conviction instead of the reasonable jury standard that the government invokes. And that's because In re Jones is meant to provide that one meaningful chance at review that this petitioner didn't get because of the incorrect statutory holding that was There's no basis in the text of the statute for imposing an additional requirement of actual innocence within the meaning of the procedural default gateway tests. 2255e asks whether the procedures in 2255 are inadequate and ineffective to test the legality of his detention. And we know that the legality of Mr. Hahn's detention on count 4 is based on whether or not that conviction is valid, not based on anything about his underlying conduct. We also know, based on this Court's decision in Wheeler, that the position that only claims of actual innocence that fit within Schleff and Boosley can make it through the Savings Clause is incorrect. In Wheeler, this Court determined that sentencing, fundamental defects in sentencing can also be cognizable in the 2255e Savings Clause context. And in doing so, it rejected the notion that what's really at issue is what could have potentially happened when it said it doesn't matter that the individual sentence could have been the same under proper proceedings. The fact that the judge sentenced him under improper proceedings that we now know are invalid under the statute, we need to send it back and vacate that sentence. And the same is true here. The fact that, well, we contest that under the Boosley test Mr. Hahn would even be able to receive the same conviction, but whether he could or not is irrelevant when you're trying to test the legality of the detention, which, of course, depends on, as I mentioned, the actual validity of his conviction. I'd also like to emphasize that even if this Court were to apply the Schleff-Boosley standard, it wouldn't be applying the test that the government asks it to apply. The government asks the Court to completely ignore that in the indictment, the same possession was listed for both counts. But, in fact, in Boosley itself, the Supreme Court made clear that that's not the way you apply the actual innocence test. You have to look at what was actually in the indictment. In that case, the government made a similar argument. It said that although in its initial indictment it had charged Mr. Boosley with use of a firearm and his conduct no longer amounted to use after the Supreme Court's clarification of that term, the government argued that Mr. Boosley should also have to prove that he couldn't have been convicted of carrying a firearm under a different prong of 924C. And the Supreme Court said that's not the appropriate inquiry. The appropriate inquiry is if we apply the correct rule to his actual indictment, could a reasonable jury have come to the same conclusion? And here we simply know that's not the case. The indictment itself is multiplicitous, and so no reasonable jury could come to a finding that he should be convicted on both counts 3 and counts 4. Finally? So on this actual innocence, are you saying that is not required in order to be able to reach those questions on the sick clause? I don't believe the actual innocence within the meaning of Boosley and Schlupp, those procedural default gateway tests, is required to reach the merits on the savings clause. Is that against all the other circuits out there? It's true that some of the other circuits have applied that test in that context, but as far as I'm aware, they've not provided a basis for why that would be included. Has any other circuit supported your view that you've just articulated? Sure. Well, I know that the Fifth Circuit takes a similar approach where it looks at the indictment and the jury instructions to determine what the jury necessarily actually came to a finding of in the initial proceedings to determine whether that would meet the newly announced rule. And, of course, this Court, as I mentioned in Wheeler, rejected the notion that only things within the actual innocence test of Boosley and Schlupp are actually cognizable in the savings clause context. And, in fact, in the government's briefing in Wheeler, it specifically invoked the Boosley test saying that the individual wouldn't be able to meet that even if sentencing errors were cognizable in the savings clause context. And, of course, the Court determined in Wheeler that Mr. Wheeler was entitled to relief, so it clearly rejected the notion that an individual has to be able to fit through the Boosley-Schlupp procedural default standard. But even if this Court were to apply the Boosley-Schlupp standard, as I mentioned, it would be bound by the indictment. But even if that weren't the case, Mr. Hahn's conduct here simply does not amount to two possessions within the meaning of 924C. And that's because he only engaged in one affirmative choice to involve guns in the drug trade, and we know that that's what was at issue when Congress was criminalizing the behaviors in 924C. And we know that if we look to pages 1, 1, 1, 1 of the Rents decision, the Court clearly goes through a statutory analysis about what Congress was trying to do when it increased the punishment for subsequent convictions. And we know that based on the Sixth Circuit's Vichitsanga case, which clearly builds upon Rents in analyzing the possession prong within the 924C context. Your Honor, if there are no further questions, I'll reserve the remainder of my time for rebuttal. Thank you. Thank you. Mr. Pelletieri. May it please the Court. John Pelletieri from the Department of Justice on behalf of the respondent, Bonita Mosley. The question in this case, the dispute between the parties, is whether Mr. Hahn  No, the bigger question is whether or not it's required. And you're in the Fourth Circuit. Well, this is a Jones case, Your Honor. Right, but that's the question, whether or not it's required to prove or show actual innocence in order to bring this claim. And I know you've done a good job of showing us other circuits and what their wisdom is, but you do know that even if you were correct, this panel can't change Fourth Circuit precedent. You do know that. And this circuit's precedent requires a showing of actual innocence under Jones, and I can explain why. Oh, you think so? Okay. Yes. The derivation of the Jones case and the Jones standard is the Supreme Court's decision in Davis. In that case, the defendant was convicted under a statute, and then there was an intervening decision of statutory interpretation, and the Supreme Court had to address whether the defendant could raise a claim on collateral review that the defendant was no longer criminal in light of the intervening decision of statutory interpretation. And the Supreme Court had to determine whether that type of statutory claim was cognizable on collateral review. And the Court said that statutory claims are cognizable if they represent a fundamental defect which inherently results in a complete miscarriage of justice or presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent. Now, that type of claim, and it said in the context in which someone claims that their conduct is no longer criminal, the act for which they were convicted is no longer criminal in light of an intervening decision of statutory interpretation, no doubt presents those circumstances. Now, in the Jones case, this Court applied the defendant there raised a Davis claim. He said that in light of Bailey, the conduct for which the acts for which he was convicted were no longer criminal, and that's a Davis claim. And so he has to show that his conduct, the acts for which he was convicted, are no longer criminal. In this case, this Court and every other case that has addressed Davis and Bailey has concluded that this what this means is actual innocence. In the Foote decision, Your Honors said that in Davis, the Supreme Court concluded that Davis' habeas claim amounted to a complete miscarriage of justice because he claimed that his underlying conviction was abrogated, i.e., he became actually innocent of the crime. In other decisions, the Court has characterized a Davis claim as actual innocence. He has to show that the conduct for which he was convicted, the acts for which he was convicted, are no longer criminal in light of an intervening decision of statutory interpretation. That — What about Wheeler, which is a sentencing case? Yes. So this Court has held — That wasn't about actual innocence. Correct, Your Honor. So what this Court has held is that in order for a district court to have jurisdiction over a habeas petition under the saving clause, there has to be a fundamental defect. Now, Davis and actual innocence is one type of fundamental defect. In Wheeler, this Court concluded that there are other types of fundamental defects that can be raised in a saving clause case, including fundamental sentencing errors. And then the Court concluded in Lester that mandatory guidelines errors are fundamental sentencing errors. But there's no dispute in this case. Wouldn't a failure of the conviction itself be a fundamental defect? Do you dispute that the appellant was, in fact, convicted of one possession twice? He was convicted of two counts of — The same possession? Well, the jury was not asked to determine how many possessions, Your Honor. The jury was only asked to decide that he possessed one or more of those 21 guns in connection with one predicate and that he possessed one or more of those 21 guns in connection with the other predicate. There was never any dispute because it was not an issue that came up in light of — because rents had not been decided. Under binding 10th Circuit law, the jury did not have to make that finding. And to just simply claim that because the jury did not make that finding — The counts are identical, though. Well, there's 21 counts. So as my friend suggested, there's an issue of multiplicity because — There is. I don't know why — did the defense not file a motion to dismiss one of those counts as multiplicious? I'm not aware of that, Your Honor. I believe that this was first raised as sentencing. Because it clearly is. And I think that what you get here is multiplicity is a constitutional claim based on the Fifth Amendment and the Sixth Amendment. The actual innocence under Jones should not be used as a bootstrap to raise another type of claim of constitutional error that cannot be raised in a saving clause case. The issue in this case is whether his conduct is, in light of the record as a whole, is no longer criminal in light of intervening statutory — in light of a Now, there may have been multiplicity — What's the difference between the possessions in counts three and four of the indictment? Well, as charged — It's the same — go ahead. As charged in the indictment, the indictment said that he did knowingly possess firearms. And then it said, namely — and then it listed them — Yeah, I'm looking at it. — in furtherance of a drug trafficking crime. And the same with the other one. The same with the other one. On the same date. I'm sorry. In the other count, he said — It's a different drug, but it's the same date. No, it's not a different drug. It's a different predicate in that one is manufacturing marijuana and one is maintaining a plea. Oh, so it's the same. Okay. So there's — It's the same date in the same guns. Yes, Your Honor. And then at — so if this were to be charged today, if this were to proceed to trial today, the government under Rents would have to elect which guns we're going to proceed on in each count. So it wouldn't be fatal to the case. Like, a multiplicity in an indictment is not fatal to a case, particularly if it comes up prior to trial or prior to the time that the case is sent to the jury. All we would have to do — if this case — if this indictment were operative today in light of Rents, all we would have to do is elect which firearms we're proceeding on in count three, which firearms we're proceeding on in count four, and then the jury would have to be instructed that it would have to find separate possessions for the firearms in count three and the firearms in count four. So that's why the convictions, even after Rents, are fully within the scope of the charges in the indictment, but the jury just did not make the finding of the separate possessions. And to conclude that somehow a defendant on collateral review is in a — can establish actual innocence merely because the jury was not instructed to make a claim. So this defendant, who has had direct review, who's had a 2255 collateral review, and is now on a saving-clause habeas review, in a better position in many ways than a defendant on direct review. If a jury is not instructed on an essential element of an offense on direct appeal, that's reviewed for harmless error. The Nader case in the Supreme Court, N-E-D-E-R, held that materiality is an element of wire fraud and mail fraud, and the jury was not instructed at all on that element, but the Supreme Court held that the error was harmless because it didn't affect the outcome of the trial because materiality was established. Now, on — obviously, if that was a preserved argument, but then if it wasn't preserved, it would have been on plain error. And then on collateral review, there's even a higher standard. And now Mr. Hahn is asking this Court to recognize a similar claim in a 2255 where the pathway is even narrower. So he would be putting himself in a better position than defendants on direct review because we wouldn't — if the Court were to evaluate it against the jury instructions, what the Court needs to do is evaluate it against the record as a whole, all the evidence in the record, and apply the standard that applies in other contexts of actual innocence, which was, has Mr. Hahn established by a preponderance that no reasonable jury can conclude that he was — that he was guilty, that his conduct constituted two separate 924C offenses in light of rents? Now, under that narrow you just gave, could you have the same drug possessed or with — possessed with intent to distribute and in charge 21 different times of — he possessed this cocaine with this Luger, this same gun with a 9-millimeter. This one would go down the line, 21 different guns for the same substantive, carrying the same drug? The government would have to prove under rents two things. Number one, that each predicate is separate under the Blockberger test. They're just — they're separate offenses, each predicate. And then number two, that for each of those predicates, there's a separate possession. So if there's only one — so, for example, if there's one cache of guns that are stored all together and there's nothing distinguishing them, they're not stored at different times. If they were — if there were 10 guns, for example, that were all stored together in one possession, then that would support only one 924C under rents. But here you have different possessions. Under governing law, when courts look to determine whether there's more than one possession of multiple firearms, courts look to whether they are possessed or acquired at different times or stored in different locations. And, in fact, the Tenth Circuit itself found three separate possessions in circumstances extremely similar to this case. There was a gun in someone's bedroom. There was a gun in the defendant's garage — in a car in the garage. And there was a gun in a car outside the home. And the court said in those circumstances, although the guns were all found by the police during a search on the same day, they were possessed separately. Those are separate possessions. And in a typical case, if this were to proceed today, there would have to be a jury finding of separate possessions. We would have to ask the jury to find different locations, separate locations, so that there's sufficient separation between the firearms to support multiple possessions. And then the government would have to prove that each individual possession is connected to a separate predicate underlying either drug offense or a crime of violence. And that — the evidence in this case, construed in the proper light, looking at the record as a whole, establishes that a reasonable jury could find multiple — There's only one predicate here. No, there are two predicates, Your Honor. Oh, right. Okay. And it's undisputed that those are separate. They're separate because — So you could do 42 counts? No, Your Honor. We would have to show — I mean, if they were — if the guns were in 21 different places. If they're used separately, if they're carried separately, if they're possessed separately, those are all separate acts that if they are connected to independent predicates — so let's say there were 42 separate possessions, but there's only one predicate. We could still only charge 1924C. There has to be 42 predicates that are separate under Blockburger. Right. So here, we could only charge 2924Cs because there were only two predicates. Even though there are three possessions, those three possessions could only support two 924C convictions because there are only two predicates. That's under rents. So three possess — so you could — all right. We would just have to connect one of those possessions to one — No, I understand what you're saying. — and one to the other. And to evaluate whether he's actually innocent under that standard, the court has to look at the whole record and figure out whether any reasonable jury could so conclude. And even if this court thinks that there's a question about whether the defendant's conduct is no longer criminal in the light of rents, that in itself indicates that there's no fundamental defect. We flagged this for the court in a footnote because this court's cases would establish if Mr. Hahn were convicted in a district court within the Fourth Circuit, he would have no claim because under this court's — under the Kahn decision and others, as long as there are separate predicates, the multiple 924C convictions are permissible. So if this court were to think that, may, there's a question about actual innocence under rents, it would have to grapple with the fact that this court's cases reach the exact opposite conclusion. And in our view, in the government's view, there's no fundamental defect that would support saving clause relief when the — when there's a different — when the different results would — there would be different results based on the circuit law that applies in the circuit of conviction versus the circuit where the defendant's detained and where the habeas petition has to be filed. That would — that would be — it would be kind of remarkable for this court to conviction would be perfectly permissible under this court's precedent. And this — this court in Jones relied on a number of cases, the Davenport case from the Seventh Circuit, Treastman in the second, Dostainville in the third. And in fact, in the — in the Davenport case itself, which this court relied on in Jones, the court said that when there is a circuit split, there is no presumption that the law in the circuit that favors the prisoner is correct, and hence there is no basis for supposing him unjustly convicted. Where were the three locations of the guns here again? So there were — 21 guns were found on the same day. There were — In three separate locations. Yes. So there were several — I don't know the exact number, maybe around 10 — were on the second floor of the home in the bedroom. And in that — and they were all out and loaded. And they were with a flak jacket, with a Kevlar helmet. Okay. Where was — okay, the second floor and then where else? Okay. And then there was on the ground floor, there were — which is where the manufacturer — the manufacturer growing manufacturing operation was located, was all on the ground floor. Okay. So if — we don't even need to know the third one then. If there was only one predicate here, let's — only the manufacturing of marijuana, the storage on the second floor — Would not matter. We could only link one up to that predicate. The government wouldn't argue that storage of the guns on the second floor wasn't in furtherance of the manufacturing? Oh, well, they don't have to be mutually exclusive, Your Honor. I mean, the fact that he possesses a gun in furtherance of two different crimes, as long as we link up one gun with one crime in another separate possession, not just a different gun — No, Your Honor. There's two — so if this were tried today — No, what? We would have — I'm not talking about today. I'm talking about what happened in this case. Yes. At the time, the jury wasn't asked, so we were able to prove that he possessed any of the guns in connection with one of the predicates and any of the guns in connection with the other predicates. Is that what the jury instructions said? Yes, it — you can find that — the jury instructions said that you have to find that one or more of the firearms was possessed by the defendant, and that firearm was possessed in furtherance of the manufacturing offense. And then the court — then the jury was instructed with respect to the other 924C offense that the jury had to find that one or more of the firearms was possessed in furtherance of the second 924C offense. Are the — do you know — are the jury instructions in the record?  Oh, okay. They have a trial transcript. Oh, here it is. Sorry. They are at, I believe, in the 400 range. That's all right. I was just looking in the wrong book. Okay, not yet. I can find it. It's in the government supplemental appendix toward the end. And — but just to be clear, the jury instructions are not relevant to the Jones analysis, the actual innocence, to determine whether the conduct for which he was convicted is no longer criminal. The court has to look to the whole record and figure out whether a reasonably — a correctly instructed jury could reasonably find that he convicted — he committed two separate 924C offenses. Again, to kind of base this on the — to base actual innocence on the jury instructions would be contrary to the notion of a fundamental defect of actual innocence, contrary — would put him in a better position than someone on direct appeal or even in First 20 to 55 and would expand — You're conflating it. You said fundamental defect because of actual innocence. But that could be fundamental — was Wheeler narrowed to — wasn't narrowed to actual innocence? But there's — the parties are in agreement that the fundamental defect, the type of fundamental defect alleged in this case is the fundamental defect in Jones, which is actual innocence. They're not claiming that the court should construct a new type of fundamental defect. And the fundamental defect, to the extent they suggest there's something other than Jones that would constitute a fundamental defect, they're really just trying to bootstrap constitutional multiplicity arguments or erroneous jury instruction arguments. And erroneous jury instructions aren't even cognizable in collateral review unless they result in a constitutional error. They're so — the error so infects the trial that the defendant is deprived of due process. And those types of constitutional errors can't be raised through the prism of the saving clause. So what Mr. Hahn is attempting to do by focusing on, perhaps, potential multiplicity, which even on direct appeal isn't necessarily fatal, or jury instructions, which only can be raised in collateral review in the first place unless they result in a constitutional error, he's attempting to widen the fundamental defect beyond anything that Jones or Wheeler or Lester has recognized to bootstrap and allow constitutional claims that otherwise cannot be raised. The court should — I wonder why Jones didn't use the words actual innocence. Well, he used the formulation in Davis that says the acts for which he was convicted are no longer criminal. But every court that has confronted Davis, that has construed, applied Davis, has characterized it as actual innocence. This court in Foote, and in other cases, other courts throughout, it's always — it's conceived of as actual innocence. Now, it makes sense to apply the Schlupp-Boozley standard because although that was developed in a procedural default, they come from — they grow from the same soil. The notion that — in Schlupp and Boozley, the notion was that a constitutional claim that's otherwise defaulted should be allowed to proceed because if someone's actually innocent, because to not let it proceed would result in a miscarriage of justice. That's the same basis for the Davis recognition that a statutory claim can be raised on 2255. Doesn't Boozley establish that innocence has to be established on the original indictment? Well, it has to be within the scope of the indictment. Yes, Your Honor. So, for example, in this case, we couldn't say that, well, we charged him with possessing firearms, but he actually carried them, so he's not actually innocent. It has to be within the scope, and it is in this case, as I've explained. Each charge charged him with possession of a firearm, all 21. Now, granted, under rents, there's a multiplicity problem. We'd have to — if going today, we'd have to elect which possession we're proceeding on, but that's still within the bounds, within the scope of the charges in the indictment. But in this indictment, we don't know whether the jury actually found him guilty of the same gun. We don't, and we never know based — whenever there's an intervening decision of statutory interpretation that narrows a criminal statute, for example, it adds an element. We never know if the jury made that finding. It has to be a probabilistic determination, and that's even on direct appeal. Why is that not a fundamental defect? It's not even a fundamental defect on direct appeal. As I explained, in the Nader decision, the court held that there's materiality is an essential required element of wire fraud and a offense, and the jury was not instructed, didn't have to find it. And it applied harmless error review for that, and it found that it didn't affect the outcome, and therefore, we're not going to overcome. Now, it is a constitutional error. The jury has to be instructed on every element. That's a constitutional error, but it's not necessarily — it doesn't necessarily — it's not necessarily fatal to a conviction. And, again, this is a — that type of failure to instruct on an essential element is a constitutional error, and the saving clause is not a vehicle to raise that type of constitutional error. The saving clause is a vehicle to raise a statutory claim. And to do that, we look to the statute, we look to the narrowed version of the statute, and we look to all the evidence in the record to determine whether any reasonable jury could find that the defendant committed an offense under that narrower interpretation. And then, again, if this court is somehow — finds it questionable whether the defendant is actually innocent under arrents, we suggest that there can be no finding a fundamental defect because this court's case has established that he did commit two offenses, regardless of separate possessions and uses. This court only looks to the underlying predicates. So for two courts — for this court to find a fundamental defect when itself it would have affirmed this based on another circuit's precedent when there's no authoritative Supreme Court precedent would break new ground. It would be the first time that I'm aware that any court found a fundamental defect in those circumstances. I see my time's up, unless the Court has any other questions. All right. Thank you. Thank you. Ms. Peltier? Your Honor, I would begin just by noting that, of course, it's true that some courts have referred to the analysis in Davis as looking for actual innocence. But that phrase does not necessarily import a standard from an entirely different context into the Savings Clause context. And Davis was decided in 1974, but the Schlupp standard was only created by the Supreme Court in 1995. So it's very clear that Davis does not mean actual innocence within the meaning of Schlupp and Boosley. And we know that because for the past 18 years that this court has been applying in Ray Jones, it's never gone back to look through the transcripts from trial and to think about different things that the government might have argued or could have charged. It simply applied the rule from the new substantive rule, in this case rents, to the conviction as it was actually obtained. So what standard do we use if not actual innocence under Jones' analysis in this case? In this case, the appropriate thing to do is to simply look at rents and determine whether or not that rule, the requirement of use, possession, or carry that independently supports each count of 924C, whether the challenged conviction in this case can meet that rule. And here we know it can't because we know as a matter of certainty that the exact same possession. And we know that nothing in the jury instructions could possibly cure that or did possibly cure that. And we would submit that nothing in the jury instructions could cure it because here the government specifically told the grand jury, we're charging the possession in furtherance of the manufacturing crime for count three and the possession in furtherance of the maintaining a place count in count four. These are separate theories for the same possession. And the government made that point to the grand jury. We don't know if they thought they might have been unable to get an indictment on both counts if they hadn't referred to all of the guns for both of them. We have no idea what the grand jury would have done or what the jury would have done here. And the government comes up with a new theory of how it could have charged the case, different guns in different areas. But it didn't do that. And there's reason to believe that the jury would not have convicted on that basis. Mr. Hahn had reasons for having guns in his home. He had reasons for having them in a locked safe. He was a sportsman. There's no basis to believe that the jury would have necessarily accepted the brand new theory that we post hoc in the briefs in this case. And so that's the reason why this court simply applies. Well, they accepted the theory that at least one of them were used, right? Yes. We know that the jury found that at least one of the 21 guns was used in furtherance of the two crimes. It may have been the same gun that was used in furtherance of both of those predicate offenses. So we don't know. We certainly can't necessarily know what the jury did. And we don't have a basis here in the record to determine that the jury would accept the government's new theory. But, of course, there's no basis in In re Jones to look to whether or not there is this Boosley-Schlupp reasonable juror test that's met. In characterizing the Davis type of claim, a statutory innocence claim, as an actual innocence claim, that does not require importing this other standard from the procedural default gateway context into the. So you're saying it doesn't have to be a fundamental error either? Oh, it absolutely must be a fundamental error. Well, what's your answer to Mr. Pelletieri's argument that even in the Fourth Circuit, if it was a direct trial, these circumstances, we would allow conviction under these situations where you have weapons found in different places. And as long as you have a sort of a predicate on or around a fence that's different, that one for that one, that one for that one, then how does it become, as he said, I'm just addressing, address that part of his argument. You do it here. How can it be fundamental? Well, Your Honor, I think the relevant question is what the law is in the circuit of conviction. And that's the way that. That's what he's talking about in the Fourth Circuit. Foot. In places like. It talks about that. He's saying basically it would put Mr. Hahn in a better position than those people who are being tried in direct trials in terms of trying to find a I don't believe it would put him in a better position than he would have been on direct review. If he had been able to raise this claim in the Tenth Circuit on direct review, the Valentine case in the Tenth Circuit specifically says that you need to have a finding when separate possessions are required for separate counts. And there was no such finding here. So the court would have put him in a better position than petitioners on direct appeal in the Fourth Circuit. Your Honor, it may. The Fourth Circuit hasn't specifically addressed the situation where there's a simultaneous two simultaneous predicate crimes and only one possession with two charges of 924 C. As far as I'm aware, there's the camp case and as well as the con case. But then in Leidy, this court said that type of offense can't be a second and subsequent offense for purposes of sentencing. So Mr. Hahn would have had significant arguments to raise in this court. And this court very well could find the court's opinion in rents persuasive. So there's no clear rule in this court that he would have absolutely been able to be convicted as far as we're aware. But we would also just want to respond to the argument that Mr. Hahn is trying to bootstrap a constitutional argument. Of course, whenever an individual is convicted in violation of a statute, there is a constitutional implication to that. A multiplicity, of course, has constitutional implications. Double jeopardy has constitutional implications. But that doesn't mean this isn't a statutory claim. Every Davis argument about statutory innocence is going to have constitutional implications. Because when an individual hasn't been, there's no authorization from Congress for his detention, that's going to be a constitutional violation. I would finally just say that the fact that the Tenth Circuit has held that multiple possessions can be found for purposes of a felon in possession statute based on different is not really on point here because the court in rents specifically noted that what possession means in the context of 924C is a specific question to that statute. It's part of the unit of prosecution inquiry. And as we mentioned, the statutory analysis at 1111 goes through why a second conviction under 924C is supposed to be a big, it has a huge jump in punishment because it's supposed to be something really different from the first conviction. It's supposed to be a second choice to make the drug trade more dangerous, to involve guns in the drug trade. And here the two, there's no question that the predicate offenses were simultaneous and that he possessed the guns in one way, which was to protect the home, to protect the marijuana. That has to be the theory of how it was furthering the drug offenses. And there's no basis to believe he somehow did that in separate ways at the same time through different affirmative choices. And, you know, there's numerous opinions interpreting whether or not these type of simultaneous possessions or simultaneous uses, carries, or possessions in the 924C context can support multiple charges. And courts have consistently said what Congress was focusing on with 924C is the separate affirmative choice to involve guns in the drug trade. And, for example, the Sixth Circuit's decision in Johnson and Vichit Vongsa make clear that it doesn't really make sense to conceive of two or more possessions within one moment in time in the context of 924C. Unless the court has any further questions, we ask that. So you're saying that you don't believe that the case was tried today you could have two separate guns, no, one gun, and actually, or two guns, for example, and assign those to different substantive areas. Oh, you're just saying one or a hundred, all in furtherance of whatever you do in the drug category. So different drug, like let's say methamphetamine production and cocaine, same house, one gun. You don't think you could say that gun for the methamphetamine and that one gun for the cocaine, even today in the Fourth Circuit, correct? That's your position? In the Fourth Circuit or in the Tenth Circuit? No, here. Fourth Circuit. In the Fourth Circuit, I don't believe that you could get, I certainly don't believe you could get two convictions on that basis with a second and subsequent bump to the 25-year increase. Whether or not the Fourth Circuit would treat the requirement that you have both a predicate offense that's separate and a possession that's separate, I don't think that that's been specifically addressed. I think the Fourth Circuit's precedent is different than the Tenth Circuit's, but I think that there's a reason that the Tenth Circuit's substantive law on 924C applies here, and that's because in Ray Jones, the court said at prong one, was the petitioner foreclosed from bringing this claim by binding precedent at the time? And of course, no matter what the Fourth Circuit's precedent was in 2001 and 2006 when Mr. Hahn's case was on direct appeal and first collateral review, that would not have possibly bound him in the Tenth Circuit about what he could argue and what he could get reviewed on the merits. Only Tenth Circuit precedent or Supreme Court precedent could have bound him. So that is clearly the law that's at issue in prong one of N. Ray Jones. And then when you get to prong two, the court says, was there a change in that substantive law, clearly referring to the law at issue in prong one? And so it's clearly referring to, was there a change in the substantive law of the Tenth Circuit or the Supreme Court that would reverse the binding precedent that had previously foreclosed him from bringing his claim? So this Court need not to address what its own precedent is in the 924C context  The fundamental defect you said, we don't look through the Fourth Circuit lens. Correct. You look at whether or not there's a fundamental defect in the conviction, which has to do with the law in the place of the conduct and the place of the conviction. And I don't think there's any precedent for interpreting the Savings Clause differently than that. Of course, in this case, we believe that it wouldn't amount to two possessions as a matter of statutory interpretation. And I think that the circuits that have considered 924C on the possession question have come to that same conclusion, that it requires separate affirmative choices, most recently in the Sixth Circuit's opinion in Vichit Sangha, interpreting rents. If there are no further questions, thank you, Your Honor. Thank you so much. All right. We'll come down to Greek Council and proceed to our last case for the term.
judges: Roger L. Gregory, James A. Wynn Jr., Stephanie D. Thacker